Thank you, Your Honors. May it please the Court. This appeal turns on a basic rule. An antitrust claim does not arise until the plaintiff suffers an antitrust injury. The District Court misapplied that rule and created an impossible situation. It held that the plaintiff's antitrust claims were compulsory counterclaims that had to be filed in a prior arbitration before the restraint of trade was enforced and caused an antitrust injury to the plaintiffs. The restraint of trade in this case was a horizontal agreement to not compete. It had no legitimate purpose, so it was unreasonable as a matter of law. All it was was an agreement between two actual or potential competitors to not compete on the basis of products or markets. It caused an antitrust injury when it was enforced for the first time on November 20, 2019 and excluded the plaintiff's business called Goforth Home and Lawn in Bolivar from the market. The damages that Goforth requested were the profits lost by their business during the time that it was excluded from that market. The District Court held, though, that their claims arose before that time, when as soon as they incurred attorney's fees to respond to the demand for arbitration filed by Sears on July 15, 2019. Even though their business was not actually excluded from the market until that later date in November, November 20, 2019. So it put them in this position where they, in the arbitration, had to file the claim before their business had been excluded from the market. So they would have had to have alleged in that arbitration that we want damages for lost profits of our business because it was excluded from the market. Which of the businesses are you referring to? The Goforth's business, Goforth Home and Lawn, the one that the restraining order was enforced against. So the District Court, in effect, was saying that they had to file their claim to recover lost profits that they had not lost on July 15, 2019. Which if they had done, the defendants would have moved to dismiss that claim and would have said correctly that this business is actually still open, operating, and actively competing in the market and hasn't suffered any damages. And the claim would have been dismissed. But because the Goforth's plaintiffs waited and filed their claim after November 20, 2019, but still within the applicable statute of limitations, the District Court held that they had filed their claim too late. So in other words, the ruling was that they couldn't have filed these claims at any time. Which just can't be the case. So resolving this appeal depends really on the standards for determining when a private claim for damages under the Sherman Act or Section 4 of the Clayton Act arises. And we know there's three elements. An unreasonable restraint of trade, an antitrust injury, and damages. And the most important one for the determination is the injury. And it can't be just any injury. It needs to be an antitrust injury. And that's replete through this Court's case law. You know, the Midwest case, which says expressly... You acknowledge it can include defense costs. Sure. Courts have allowed that, including the Ninth Circuit has a case. Yeah, it's the Ninth Circuit. Yes, Your Honor. Defense that says it can be. Did your clients really believe... Let me start this question again. Did your clients really think the arbitration was a sham and another way to get them? Well, Your Honor, no. The arbitration when it was filed, it just said breach of contract. And it was actually filed before the dealer agreement had expired. So it was while they were still operating under that dealer agreement. And so it didn't put them on notice of whether Sears was going to... Sears was actually trying to recover... Sorry, the defendants were trying to recover damages. It was like $995,000. It didn't specifically say, this is a claim to enforce the non-compete agreement and prevent you from operating a competing business. That's not what the demand stated. So there wasn't any allegation by the go-forths or the plaintiffs at that time saying this is a sham litigation. Nothing like that. Their words are sham. And what's their other words? Bad faith. Yes. And the point that we make is that... Are you sure your clients didn't really think that, though? Yes, Your Honor. Because at the time, when we're talking about the FRCP 13 rule, we're talking about just the time that they served their pleading. And even if they would have had a claim for sham litigation or a Walker process-style claim, and you say that, okay, that claim should have been filed at that time and it's barred, it's still a completely separate claim to say, we're suffering damages for the profits lost while our business is excluded from the market. And under Claire and the Zenith case, those cases make clear that each time a plaintiff is injured by an act of the defendant's cause of action accrues to him to recover the damages caused by that act, and as to those damages, the statute of limitations runs from the commission of the act. And so when we're talking about sham litigation claims, which isn't the claim that they filed, that is a completely separate claim that seeks recovery for a completely different injury. So you believe that you would have to use words like sham and it's part of the ongoing antitrust, the arbitration is just part of the ongoing injury? Sure. I agree that if we had filed this action against the defendants and had said, we want to recover for a sham litigation claim, the district court's ruling would have been correct and that claim would have been dismissed. And to the extent the complaint stated that, that claim would be a compulsory counterclaim in the first arbitration because, yes, it was based on the defense costs. But the claim that they did file for the profits lost by their business while it was excluded from the market by the actual restraint of trade itself is a separate claim and shouldn't have been dismissed because it did not arise by the time they filed their response in the arbitration case. Your argument is a timing argument. It's not an argument based on the claims not being appropriate for a counterclaim.  So timing is your argument. Yes, Your Honor. Yes, the time at which the claim arises because that's how the compulsory counterclaim rule is. There's no dispute that this all comes out of the same operative facts? Sure, yes. And if you look at, in our brief, we cite the Cochrane v. Iowa Beef Processors case, it does say in that case expressly, even if it arose out of the same transaction or occurrence, a claim for relief that has not matured need not be asserted as a compulsory counterclaim. So we agree that all of these things arise out of the same transaction or occurrence, but the claim for the lost profits arose after they filed their response in the arbitration case. Go ahead. Is the maturation of a claim different than the accrual of a claim? I mean, and to me that's kind of an interesting question because we say all the time for statute of limitations purposes, well, if you have notice and you're incurring this loss and it has become apparent that the non-compete is a focal point of the litigation, well, that the claim has probably accrued. But a claim for lost profits as a result of the closing of the business might be viewed as just incidental and flowing naturally and that claim had already accrued, should be a compulsory counterclaim. Or it might be because maturation is a different thing. And I think maturation must mean ripeness at some level. I mean, I'm not really sure because I'm not that smart, but I think that it must mean that the claim's got to be ripe enough to bring. And your claim is essentially that maturation is somehow different than accrual and that that maturation arises when the loss, the direct loss claimed, has occurred. Yes, Your Honor, I agree. And I think that's completely consistent with the Clare case, which actually emphasizes regardless of the plaintiff's knowledge of the alleged illegality at much earlier times. So the fact that they could predict the defendant's going to enforce this restraint of trade, it doesn't matter under the analysis. And it's a weird case, of course, because a restraint of trade doesn't ever happen until the first arbitrator says it's valid and enforceable. Yes, Your Honor. And the evidence was undisputed that they were openly and actively competing up until that point. And so that brings us to that part where holding that they should have filed the claim at that time is essentially holding that they should have filed the claim for damages they hadn't suffered yet at a future date, which I'm certain because I did the arbitration. The claim would have been dismissed, and they wouldn't have been able to file it at that time. Well, you said a magic word there, and I do want you, if you're halfway through, as you know on summary judgment we can affirm for any reason in record. And you know the res judicata argument. And why isn't it true that your clients had a full and fair chance to litigate all this at the arbitration, and its result is binding, and the arbitration is the end of the case? Yes, so the second arbitration, which is the res judicata. And that's because under the arbitration agreement, the parties agreed that that decision would not be final, binding, or conclusive when an appellate arbitration had been filed. And so just like parties have to be bound by an agreement to arbitrate, that means all of the terms apply. And so if you look at that value construction company case that was from this court, it said that even an unconfirmed arbitration award can be final and binding. But what it was emphasizing was that's because confirming the award was inevitable. If the party seeking to confirm it had moved to confirm it, that motion would have been granted. And in this case, it's very different because under the terms of the agreement, if the defendants had moved to confirm the award, they would have failed. Well, counsel, we have several cases that have flat language that the fact that the arbitration award was not confirmed does not affect the finality of it at all. I agree. I agree with that. In fact, it can be modified by a later settlement agreement and still be. So help me on that. Because even in those cases, the arbitration itself was completed under the party's agreement. The terms were that this decision is final and binding, even if you don't go to a court and confirm it. That is the case. But under this agreement, in Section 27.6 and 7, the actual term of the agreement was that it is not final and binding. The parties agreed there would be an appellate arbitration process, and once that process initiated, the underlying decision could not be final and binding. And you think that binds a court? I do, Your Honor. I think it binds the parties. And the court, when you're talking about whether to apply an arbitration agreement, it needs to follow what the parties agreed to do in that agreement. And so you can't take terms away and say, well, you know, this is final and binding, even though the parties agreed that it wouldn't be and contemplated that it wouldn't be. Now we're going to say that it was. In the same sense that you can't say, well, you know, they agreed to arbitrate, but we're going to let them go into court anyway. The whole agreement needs to apply in the manner that the parties contemplated. And I cited this Hirsch v. DST Systems case that actually said, and it was a district court case, I think it was pretty well reasoned, it said this unconfirmed award is going to be considered binding because, consistent with the parties' agreement, the awards became final no later than the conclusion of any arbitral appellate process. It's the same case here, except the arbitral appellate process never concluded because Sears declared bankruptcy and it wasn't able to finish. Counsel, since the district court made its determination on the basis of compulsory counterclaim, if we were to reverse on that, would there be a remand for consideration of res judicata? Yes, Your Honor, the court could proceed to consider that issue because I think it did expressly make the ruling that it didn't want to go there. It says flatly it's not deciding on that ground. Yes, that's correct, Your Honor. And I'm in my rebuttal time, so I'm going to reserve the rest of it for when I come back up. Mr. Fee? Good morning, Your Honors. Brendan Fee for appellants. The district court's decision granting summary judgment because plaintiff's federal antitrust claim was a compulsory counterclaim in an earlier arbitration should be affirmed. The court can also affirm, as the court noted, on two alternative grounds, res judicata and the plaintiff's failure to disclose an expert report in support of their proffered relevant market. Unless the court has a different preference, I'm going to focus most of my time on the compulsory counterclaim issue and if there is remaining time, address the alternative grounds. As Judge Smith, as you observed during my adversary's argument, the elements of Rule 13 beyond the timing requirements are undisputedly satisfied. But in concluding that the plaintiff's federal antitrust claim in this case was a compulsory counterclaim, the district court simply applied the black letter rule that I think everybody agrees controls here. And I think respectfully my adversary misstated that rule as he was reciting it to Your Honors. Although factually different, the Clar and Zenith case both set forth the Hornbook rule that an antitrust claim, quote, accrues when a defendant commits an act that injures plaintiff's business. So the test focuses on the defendant's act, not the injury to the plaintiff. The act that Sears Hometown committed in this case was filing the arbitration on June 7th, 2019. What happened later on November 20th, which is the date that plaintiffs suggest, is an action by an arbitrator. Sears Hometown did nothing on that date. So under Clar and Zenith, the controlling rules by the Supreme Court in this case, the claim accrued for Rule 13 purposes on June 7th. Second, as the court observed in Midwestern Machinery, this court's decision in Midwestern Machinery, an antitrust claim based on a restrictive covenant like a non-compete in this instance, accrues when the defendant commences an action to enforce that covenant. And the Ninth Circuit's decision in Pace, which we discussed extensively in our papers, which Midwestern Machinery cites with approval, and Judge Smith, your decision in Varner also cites with approval. And I want to spend a little bit of time on Varner in a few minutes. But Pace is very closely analogous to this circumstance. There, as here, there was a contractual non-compete that the plaintiff alleged constituted a conspiracy in violation of Section 1 of the Sherman Act. The court held that the claim accrued upon the filing of a lawsuit by the defendant to enforce the non-compete provision. When you said a magic difference, does it matter if it was judicial and not arbitration? It doesn't in this instance, Your Honor. It does not? It does not, because it's simply a judicial process or an arbitration process. That distinction does not matter for purposes of the analysis in this case. But the court held that the initiation of a lawsuit is the final immutable act of enforcement of an allegedly illegal contract. In other words, it was the last over act that could have been permissibly challenged. So it was the last act, not the first act. It was actually the last act that could be challenged. And the reason that the court held that is because it rejected an argument similar to that which the plaintiff makes in this case. Because what the court said there is all subsequent acts are controlled by the exigencies of the litigation, not the enforcement of the contract. And so in the words of other courts, including this court, that what happened in the arbitral proceedings and the court proceedings in pace were simply the, quote, unabated inertial consequences of the filing by defendants. And therefore, the cause of action accrues for both statute of limitations and Rule 13 purposes at the time of the filing. Now, I will say Pace was a statute of limitations case. But Pace does observe in footnote four and throughout the opinion that the same analysis would hold true under Rule 13. And so in that respect, Pace is on all fours with this case and requires affirmance of the district court's decision. Requires is too strong. It's a Ninth Circuit case, right, counsel? You're correct, your honor. That is true. It is, in my view, highly persuasive authority. But you are correct. It is not controlling. But I do want to observe that this is the Varner decision, which is a decision that is cited in this court. Your honor, Judge Smith's decision is helpful, too, in this regard, because it speaks to this notion of unabated inertial consequences of an action by defendant not prolonging the statute of limitations. And so I also believe that under both Varner, Midwestern machinery, and Pace, which is a very factually similar, the district court's decision should be affirmed. I want to discuss a few of the cases that the plaintiffs have cited to and mentioned in their briefs and in argument. Those cases are different because they're continuing conspiracy cases. We don't have a continuing conspiracy here. What we have is a enforcement of a restrictive covenant through arbitral means. We do not have a continuing conspiracy case. And continuing conspiracy is an exception to the Zenith rule that I earlier articulated. And what it does is it restarts the statute of limitations. For long periods of time. For long periods of time. So what those cases look at, they look at the last point in time at which a plaintiff can assert a claim. And they have a different purpose than what Rule 13 serves. Rule 13 looks at it from the other direction. What is the earliest time at which a plaintiff could have brought a claim? And so those continuing conspiracy cases, they're the exact opposite of what we have here. And again, the propane tank decision characterizes these continuing conspiracy cases precisely that way. It restarts the statute of limitation. Varner, likewise, characterizes continuing conspiracy as an exception to the rule that I outlined, which is focused on the defendant's conduct. Paradigmatically, those continuing conspiracy cases or horizontal conspiracy cases that are brought by purchasers of a widget, for example. And what they say is each time a purchase was made of the price-fix product, for example. Here, this isn't a price-fixing case, but just take, for example, that scenario. Each time there's a purchase, that restarts the statute of limitations. Those cases are, frankly, in opposite to what we have here. And so for all of those reasons, the district court's decision on Rule 13 should be affirmed. But even if you take plaintiff's view, which is that the Rule 13 analysis is focused on the plaintiff's injury and not the defendant's act, the district court's decision is still correct. And the reason is, as the district court observed, the plaintiffs sought, well, one, all of the facts were known to them at the time that the first arbitration was filed. All the facts were known to them that were necessary for them to file a federal antitrust claim. But secondly, they, in the second arbitration, sought defense costs from the start of the first arbitration as antitrust damages. They also identified in their Rule 16a initial disclosures, in this case, defense costs as antitrust damages. And so by their own, on this record, they suffered antitrust damages as of the filing of the initial lawsuit. And in all events, as the district court highlighted, there is no, even if it were true, which it is not, that one needs to have suffered antitrust injury in order for a claim to have accrued. The district court addressed that by citing specifically to the Supreme Court's decision in McCready. McCready holds unequivocally that one need not be excluded from the market to have suffered antitrust injury. And so for that reason as well, even if one assumes that the way plaintiff is looking at this is correct, which I disagree with and I think the district court disagrees with, the court, the affirmance is still required. Just to briefly touch on a few of the other items here, the court did not address the race judicata issue expressly, but this court can certainly affirm on those alternative grounds. Wouldn't it be better for the district court to have first cut at that? Your Honor, I think all of the facts are in front of this court. It is certainly within the province of this court to remand, but my view is that all of the facts were actually laid out in the district court's opinion that are needed for a court to find that race judicata bars the claims in this case. Please address their main answer, which we had articulated here today clearly, which is it was right in the agreement that it wouldn't be. Your Honor, number one, I would refer back to the authorities that you cited as sort of rebuttal A to that. But rebuttal B is that the language of the contract specifically, it doesn't say that the judgment of the arbitrator would not be final for purposes of its preclusive effect. It simply says that it can't be enforced. It can't be enforced until the appellate arbitration runs its course. It doesn't speak to the finality of the decision for purposes of its preclusive effect, but merely the execution of a judgment. That's what the language actually speaks to. So I don't think, number one, I think the legal authorities that Your Honor cited and that we cited in our papers say that an unconfirmed arbitration can have preclusive effect. But two, the contract does not actually preclude that even if one were to look to that as the controlling principle. The last thing I would say just on the third alternative ground, Your Honors, is that it's undisputed that the plaintiffs did not submit an expert opinion on it. Some cases say you don't have to have an expert, especially where it's a county seat town and a county by itself. Your Honor, I would take issue with that. Not that it's a county seat town and a county by itself, counsel. No, Your Honor, that is true. I've never been there. I'm here from Philadelphia, so I've not been there. But I would not dispute that. What I would dispute is that the cases say that you don't have to have an expert. Many of the circuit courts who have addressed this issue squarely have said that an expert opinion is required for market definition. And although this court has not squarely addressed the issue, I would point Your Honors to FTC v. Lundbeck, in which the court did say that in order for the plaintiff to demonstrate market definition, they have to put forward evidence of demand cross-elasticity. And I would submit to Your Honors that a study of demand cross-elasticity is not something that a layperson could do. It actually requires an expert econometrician. And so I think by implication, FTC v. Lundbeck speaks to that issue, and multiple other circuit courts speak to that issue. We cited those in our papers. And so for all of those reasons, the district court's decision should be affirmed. And I thank Your Honors for your time. I appreciate it. So I've got three minutes here. I'll try to make good use of it. The Pace case actually is supportive of our argument here. It says, if you look at the Samsung case from the Ninth Circuit, we cite it on page six of our reply brief. The whole thing there that the Ninth Circuit itself says is, all it held in Pace is that certain actions taken to enforce a contract after the contract's been executed may be sufficient to restart the statute of limitations. It's not standing for the proposition that every single time somebody files an action to enforce a non-compete agreement, the filing of the action is the last overt act, and that's it. In fact, Pace itself backs away from that ruling and makes clear that there may be other acts that give rise to a new cause of action later, but that's all we're holding in this case. And I think the critical distinction between this case and Pace is that in Pace, the injury the plaintiff suffered was not being able to enter the market in the first place. So by the time the state court action had been filed, the antitrust injury had already been suffered. The plaintiff hadn't been able to enter the market. In this case, it's the complete opposite. The plaintiffs were in the market, and the antitrust injury was being excluded from the market. They weren't excluded when the action was commenced. I do think there are differences between a judicial action and an arbitration action. For example, in Pace, one of the facts they mention is that the complaint puts you on notice of everything that the plaintiff is going to do, very different from arbitration, where in the demand, if you look at it in this case, all it says is breach of a contract, and that's it. And it doesn't even say anything about the non-compete agreement. So there are very important differences there, but I think the most important one is the fact that in Pace, the antitrust injury had in fact been suffered by the time the state court action had been filed. We also cite this Weber case from the Seventh Circuit. It actually expressly relies on the filing of a state court injunction as being an overt act. The McCready case, I'd like to talk about that. The district court relied on that incorrectly. What that case says is that there are sometimes cases where an antitrust injury could be suffered before a plaintiff is excluded from the market, but McCready was referring to predatory pricing claims. So that's like a monopolist who charges below cost to try to drive competitors out of the market and then recruits those losses after everyone's gone. Sure, in that type of case, the antitrust injury happens when the monopolist starts charging below cost, and the plaintiffs might not be excluded from the market at that time, but that's a totally different case from a restraint of trade, horizontal agreement, a combination where the actual antitrust injury is the exclusion from the market itself. We cite that Brunswick court versus Regal Textile Court case from the Second Circuit. It says expressly, exclusion from a market is a conventional form of antitrust injury that gives rise to a claim for damages as soon as the exclusion occurs. And that exclusion, in this case, occurred on November 20th, 2019. And I see my time's up, so we ask that the court reverse the decision below and then remand it for further proceedings. Thank you, Your Honors. Thank you, Mr. Regal. Thank you also, Mr. Fee.